# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-20125-GAYLES

HEALTHCARE SALES ENABLEMENT,
INC., a/k/a PATIENTFINDER, a Delaware
corporation,

    Plaintiff,

v.

ANATOLY GEYFMAN,
an individual,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff's, Healthcare Sales Enablement, Inc., a/k/a PatientFinder ("PatientFinder"), Expedited Motion to Remand Action (the "Motion") [ECF No. 7]. The Court has considered the Motion and the record and is otherwise fully advised. Because the Court finds that Defendant Anatoly Geyfman ("Geyfman") has established the requisite amount in controversy, the Motion is **DENIED**.

### I. BACKGROUND

This case arises from a dispute between competing software companies: Carevoyance and PatientFinder. According to the allegations in the Complaint, Carevoyance marketed software meant to connect patients with healthcare professionals (and vice versa), as well as companies who serviced those professionals. But the software was clunky and users complained about it. Thus was born PatientFinder.

PatientFinder is a software company that developed a new healthcare technology platform that connects medical device and pharmaceutical companies with physicians who would (or could) use their products. Since its inception in May of 2017, PatientFinder has cultivated relationships

with potential clients and data suppliers, as well as developed other invaluable trade secrets, such as healthcare data sets and information about the healthcare market that was of value to potential clients.

Carevoyance's executives recognized the potential in the early version of PatientFinder and agreed to create a new entity to help take it to market. Three parties initially owned the new version of PatientFinder, two individuals and Defendant Geyfman. As part of his employment, Geyfman signed a non-compete and a non-solicitation agreement that limited his business activities for twelve months should he ever leave PatientFinder. As part of its startup costs, PatientFinder agreed to pay Carevoyance for its core data sets, which it needed for the technology to work accurately (around $200,000). At the time of removal, PatientFinder also had around $400,000 in hand and substantial business projections.

Ultimately, Geyfman left PatientFinder to return full-time to Carevoyance. Shortly thereafter, Geyfman, as an agent for Carevoyance, began to conduct business with at least five clients on the list. PatientFinder alleges that Geyfman and Carevoyance have also developed a relationship with two of PatientFinder's data suppliers. The data suppliers' relationship caused particular concern because it meant Carevoyance would have access to data PatientFinder needed to run its software, usurping PatientFinder's market. PatientFinder's most pressing concern is that Geyfman intends to market a copycat product called Territory Manager, which will effectively subvert PatientFinder and its place in the market. PatientFinder alleges that this will irreparably harm its business, as Territory Manager is "almost identical" to PatientFinder in many respects. [ECF No. 29-1, ¶ 43].

PatientFinder sued Geyfman in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, bringing an action for declaratory relief and alleging two counts of breach of

contract. PatientFinder does not seek damages. Rather, the relief PatientFinder seeks includes: barring Geyfman's solicitation of clients as permitting him to do so "would cause significant interference with a key business strategy underpinning PatientFinder's relationship with [a data supplier]," [ECF No. 29-1, ¶ 62], enjoining the release of a product identical to PatientFinder, [*Id.* ¶ 43], enjoining Geyfman "from disclosing or using any of PatientFinder's Confidential information, and from disparaging PatientFinder" (presumably in the course of business to potential clients), [*Id.* at 15-17], and allowing PatientFinder to "pursue the opportunities for which it was created to pursue," [ECF No. 7, at 8]. In the Complaint, PatientFinder notes the "significant costs for the private claims datasets" that PatientFinder had to shoulder as the company developed and the related "invaluable relationships" with suppliers, [ECF No. 29-1, ¶ 27]. PatientFinder characterizes Geyfman's non-compete agreement as meant to protect "trade secrets, valuable confidential business information, specialized training, customer goodwill, and substantial relationships." [*Id.* ¶ 28]. Finally, PatientFinder claims that "this lawsuit is necessary and critical to protecting PatientFinder's legitimate business interests and has been prompted by Geyfman's flagrant violations of the [non-compete] and Carevoyance's aiding and abetting of such violations." [*Id.* ¶ 47]. And PatientFinder claims immediate and irreparable harm if the lawsuit does not press forward.

Geyfman removed this action to this Court on January 9, 2019. [ECF No. 1]. PatientFinder filed its Expedited Motion to Remand on January 17, 2019, arguing that Geyfman has failed to meet his burden of establishing this Court's jurisdiction. [ECF No. 7].

I. **LEGAL STANDARD**

28 U.S.C. § 1441 permits a defendant to remove a civil case filed in state court to federal court if the federal court has diversity jurisdiction under 28 U.S.C. § 1332. Diversity jurisdiction

requires fully diverse citizenship of the parties and an amount in controversy over $75,000, assessed at the time of removal. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009); *see also* 28 U.S.C. § 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)). If, however, a "plaintiff contests a defendant's allegation . . . '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 553–54 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also id.* at 554 ("In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," *e.g.*, because the amount-in-controversy requirement has not been satisfied, "the case shall be remanded." 28 U.S.C. § 1447(c). The Court is required to construe the removal statutes narrowly and resolve any doubt against removal, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), but it must be "equally vigilant" in protecting the right to proceed in federal court as it is in permitting a state court to retain its jurisdiction, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010).

**II.    DISCUSSION**

To establish diversity jurisdiction, Geyfman must demonstrate complete diversity between the parties[1] and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). PatientFinder's Motion solely argues the second requirement: that Geyfman has not met his

---

[1] There is no dispute that diversity of citizenship is satisfied: Geyfman is a resident of Oregon and PatientFinder is a Delaware corporation.

burden of plausibly demonstrating that PatientFinder's claim meets the amount in controversy.[2] PatientFinder argues that the amount in controversy is (at best) speculative because it only involves injunctive relief. Geyfman counters that PatientFinder is essentially asking the Court to disregard its own valuation of PatientFinder's clients, data, trade secrets, and customer goodwill. There is no dispute that injunctive relief is all PatientFinder seeks; what is disputed is the value of that relief.

"For amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (quoting *Ericsson GE Mobile Comms., Inc. v. Motorola Comms. & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir. 1997)). The Court, therefore, must examine "the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted." *Cent. Transp., LLC v. Glob. Aeroleasing, LLC*, No. 1:17-CV-23788, 2018 WL 4268887, at *2–3 (S.D. Fla. Sept. 6, 2018) (quoting *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014)). "Ultimately, [t]he amount in controversy is not proof of the amount the plaintiff will recover. Rather it is an estimate of the amount that will be put at issue in the course of litigation." *Id.* (internal quotations omitted). And "[a]bsolute certainty regarding the amount is neither obtainable nor required." *Id.*

This Court has previously denied remand in cases when plaintiffs sought injunctive or declaratory relief where the value *could* exceed $75,000. *See, e.g.*, *Cent. Transp., LLC*, 2018 WL 4268887, at *2–3 (denying remand because the actual "benefit that would flow to Plaintiff if it

---

[2] To the extent there is any argument between the parties over Geyfman's burden of proof, the Court agrees that Geyfman need only demonstrate by a preponderance of the evidence that the statutory limit is met. *See Galbis v. Praetorian Ins. Co.*, No. 18-23144, 2018 WL 5918911, at *2 n. 2 (S.D. Fla. Nov. 13, 2018).

5

wins in its declaratory judgment action" was far greater than the amount in controversy); *cf. Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077–79 (11th Cir. 2000) (granting remand where no "monetary value at all would accrue to the class plaintiffs upon issuance of the prospective injunction").

Of particular note, however, is the Court's decision in *Mirage Group Consultants, Inc. v. Menconi*, No. 16-81502-CIV, 2017 WL 7792561, at *3–4 (S.D. Fla. Mar. 15, 2017) ("*Mirage*"). There, the Court found remand appropriate in a case for injunctive relief despite defendant's claim that millions of dollars were at stake because plaintiff alleged "usurpation of corporate opportunities and business interference." *Id.* This holding was based on the fact that the "[e]vidence put forth by both parties identified only *possible* transactions involving third-party individuals and companies that could *potentially* lead to management fees." *Id.* (emphasis added) But here, Geyfman has alleged facts that compel a different conclusion.

Geyfman provided ample evidence that PatientFinder's value of injunctive relief far exceeds the amount in controversy. First, the Court finds that PatientFinders' cash in hand and the amount of money promised to Carevoyance for its core data represents the monetary value of the company and its assets (in total around $600,000). Despite PatientFinder's insistence that the Court not consider the money promised to Carevoyance for the data, even when discounting that sum, the Court still is left with $400,000 attributable to PatientFinder, an amount far exceeding $75,000. Second, the expected projections from current and potential client targets are well over one million dollars. The Court agrees that relying solely on the projections would be too speculative. *See Mirage*, 2017 WL 7792561, at *3–4. But the projections do establish the "estimated" value that could flow to PatientFinder if it won here. *Cent. Transp., LLC*, 2018 WL 4268887, at *2–3. Even

though not all the projections may succeed, the Court notes that the expected revenue from *current* clients still exceeds the jurisdictional minimum. [ECF No. 18, at 2].

Third, PatientFinder's representations about what is at stake in the litigation also support removal. The Court construes PatientFinder's value of relief as protecting the core of its business: the client-strategy and financials set forth in the confidential exhibit. PatientFinder characterizes this lawsuit as "necessary and critical to protecting [its] interests." [ECF No. 29-1, ¶ 47]. And it claims immediate and irreparable harm if this lawsuit does not proceed. In light of this, the Court finds that although generally projected values are too speculative to allow for removal, the projections in the confidential exhibit directly relate to the remedy PatientFinder seeks. And, when considering PatientFinder's actual worth and its own statements about what is at stake in this litigation, Geyfman has demonstrated by a preponderance of the evidence the value of this litigation exceeds $75,000. Thus, the Court must deny remand.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 7] is **DENIED**. The parties shall submit a Joint Scheduling Report in accordance with this Court's procedures. [ECF No. 6].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of February, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE